IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAROLINE TULLIE,

    Plaintiff,

v.                                                                                              No. 14-cv-0491 SMV/SCY

QUICK CASH, INC.;

    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO STRIKE OR DISMISS CLASS ALLEGATIONS UNDER UPA**

THIS MATTER is before the Court[1] on Defendant's Motion to Strike or Dismiss Class Allegations under UPA [Doc. 15] ("Motion"), filed September 2, 2014. Plaintiff filed a response [Doc. 26] on September 22, 2014. Defendant replied [Doc. 32] on October 13, 2014. The Court, having considered the briefing and relevant law, and being otherwise fully advised in the premises, finds that Defendant's Motion is not well-taken and shall be DENIED.[2]

BACKGROUND

Plaintiff Caroline Tullie ("Plaintiff") filed her complaint against Defendant Quick Cash, Inc. ("Defendant"), a loan company, on May 23, 2014. [Doc. 1]. Plaintiff claims violations of the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667(f), and the New Mexico Unfair Practices Act ("UPA"), NMSA, 1978 §§ 57-12-1 to 57-12-16, on behalf of herself, her late husband, and others similarly situated. [Doc. 1].

---

[1] The parties consented to the undersigned's entering final judgment in this case. [Docs. 4, 7].

[2] The present Motion would have been more succinct had both parties delineated the different factual bases at issue in their arguments. At the certification stage, the parties should be more specific in discussing which factual ground the arguments address.

The following facts are contained in the complaint and assumed to be true for the purposes of deciding this Motion.[3] Defendant provided loans to Plaintiff and her late husband, Nelson Tullie. *Id.* at 2. Following Nelson's death in August of 2013, Plaintiff inquired into her late husband's individual loans with Defendant. *Id.* at 2–3. Defendant represented to Plaintiff that it would repossess her truck if she did not refinance all three of her late husband's loans in her own name. *Id.* at 3. Plaintiff agreed to refinance the loans. *Id.*

Plaintiff then entered into an agreement with Defendant. *Id.* The agreement was "extremely deceptive and misleading." *Id.* While titled a "Retail Installment Contract," it was actually a "refinanced loan agreement." *Id.* Plaintiff takes issue with a $25 "application fee" in the agreement. *Id.* Plaintiff contends that the "application fee" should have been included in the "Finance Charge." *Id.* at 3–4. Including the $25 in the Finance Charge would increase the loan's Annual Percentage Rate by more than 1% above the disclosed rate of 25.85%. *Id.* at 4. The agreement contains other "defects," such as failing to adequately disclose the loan's installment payment schedule and inaccurately representing the security interest under the loan. *Id.*

Plaintiff purports to represent a class of persons who borrowed money from, or refinanced a loan with, Defendant. *Id.* at 4. On behalf of herself and the purported class, Plaintiff claims that the "deceptive and misleading statements" in Defendant's agreements violate the UPA. *Id.* at 5. Plaintiff contends that her claims are appropriate for a class action because common questions predominate over individual questions and a class action would be

---

[3] Courts must generally accept all factual allegations in the complaint as true in evaluating such motions. *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT, 2013 WL 5448078, at *3 (D. Colo. Sept. 27, 2013).

superior to individual claims. *Id.* Not only are class members unaware of the UPA violation, but also "Defendant's customers [who comprise the class] cannot generally afford counsel to engage in individual litigation against Defendant." *Id.* at 6.

Defendant now moves pursuant to Fed. R. Civ. P. 23(d)(1)(D) to strike Plaintiff's class allegations for violations of the UPA on the grounds that Plaintiff is unable to satisfy the requirements for certification under Rule 23 as a matter of law. *See generally* [Doc. 15]. Defendant does not challenge Plaintiff's class allegations for violations of TILA in the instant Motion. *See id.*

## LEGAL STANDARD

Rule 23(d)(1)(D) of the Federal Rules of Civil Procedure allows courts to "require that [a party's] pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." A defendant may move to strike or dismiss class allegations pursuant to Rule 23. *See, e.g.*, *Friedman*, 2013 WL 5448078, at *1.

A motion to strike class allegations is "procedurally permissible" at the pleading stage. *Hull v. Viega, Inc.*, No. 12-2086-JAR-DJW, 2013 WL 759376, at *5 (D. Kan. Feb. 27, 2013). The Supreme Court allows a critical examination of class allegations early in a case. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Indeed, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Id.* But while courts have authority to strike a plaintiff's class allegations at the pleading stage, they also must be "mindful of [their] obligation to conduct a 'rigorous analysis' into whether the prerequisites of Rule 23 are met." *Id.*

A court may strike class allegations at the pleading stage only where a defendant demonstrates from the face of the complaint that the proposed class cannot be certified as a matter of law.  *Friedman*, 2013 WL 5448078, at *3  (denying a motion to strike class allegations brought under Rule 23(d)(1)(D) where the defendant did not demonstrate the high standard required to strike pleadings under Rule 12(f)); *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012) (calling dismissal at the pleading stage "an *extreme remedy*"); *Francis v. Mead Johnson & Co.*, No. 1:10-CV-00701-JLK, 2010 WL 3733023, at *1 (D. Colo. Sept. 16, 2010) ("[A defendant] must demonstrate from the face of [the] plaintiff['s] complaint that it will be *impossible* to certify the classes alleged by the plaintiff[] regardless of the facts the plaintiff[] may be able to prove." (internal quotation marks and alterations omitted)).  Generally, a motion to strike is a drastic remedy and is "disfavored by the courts."  *Francis*, 2010 WL 3733023, at *1 (quoting *Thompson v. Kindred Nursing Ctrs., E., L.L.C.*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002)).  A motion to strike class allegations is "even more disfavored" than other requests to strike because it asks a court to "terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint," and before a plaintiff may complete discovery.  *Id.* (quoting *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991)) (internal quotation marks and alterations omitted).  Accordingly, federal courts commonly deny motions to strike class allegations at the pleading stage.  *See, e.g.*, *Knopke v. Ford Motor Co.*, No. 14-2225-JAR-JPO, 2014 WL 5817326, at *9 (D. Kan. Nov. 10, 2014); *In Re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 616 (N.D. Cal. 2007) (denying the defendant's motion to strike or dismiss class allegations and allowing the plaintiffs to "make the case for certification based on

appropriate discovery"); *but see, e.g.*, *Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949–50 (6th Cir. 2011) (affirming district court's grant of a motion to strike).

## ANALYSIS

The present Motion concerns Plaintiff's UPA allegations. The UPA provides a private right of action to anyone damaged by unfair or deceptive trade practices. *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 620 (D.N.M. 2007); *see* § 57-12-10. To prove a violation of the UPA, a plaintiff must show that:

> (1) [the] defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person.

*Mulford*, 242 F.R.D. at 621 (citing *Brooks v. Norwest Corp.*, 2004-NMCA-134, ¶ 37, 136 N.M. 599).

The UPA allows anyone "who suffers any loss of money or property" as a result of unfair or deceptive trade practices to recover monetary damages. § 57-12-10. Monetary damages available to individual claimants differ from those available to class members in a class action lawsuit brought under the UPA. *See id.* An individual claimant may recover "actual damages or the sum of one hundred dollars ($100), whichever is greater." § 57-12-10(B). And where the defendant has "willfully engaged" in the unfair or deceptive trade practice, an individual claimant may receive treble damages or $300, whichever is greater. *Id.* However, class members in a class action lawsuit may only recover actual damages. § 57-12-10(E).

Plaintiff's complaint seeks damages on behalf of a purported class consisting of Defendant's customers. [Doc. 1] at 4, 6. The class has not yet been certified. In order to

actually certify the class, Plaintiff must show that her purported class meets the threshold requirements of Rule 23.  *See* Fed. R. Civ. P. 23; *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004) ("[T]he party seeking to certify a class bears the burden of proving that all the requirements of Rule 23 are met . . . .").  At the certification stage, a court first inquires as to whether the plaintiff's purported class meets the four Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation.  *Shook*, 386 F.3d at 971; *Porcell v. Lincoln Wood Products, Inc.*, 713 F. Supp. 2d 1305, 1309 (D.N.M. 2010).  "If the court finds that the plaintiff[ has] met these threshold requirements, it must then examine whether the action falls within one of three categories of suits set forth in Rule 23(b)."  *Shook*, 386 F.3d at 971.

  Plaintiff's complaint indicates that she will ultimately seek certification under Rule 23(b)(3).  [Doc. 1] at 5; *see* [Doc. 15] at 4.  To do so, she must establish that the suit satisfies the predominance and superiority requirements of Rule 23(b)(3).  Fed. R. Civ. P. 23(b)(3); *see Mulford*, 242 F.R.D. at 625, 630 (referring to the requirements broadly by these terms).  Predominance requires that common questions of law or fact "*predominate*" over individual questions among class members.  Fed. R. Civ. P. 23(b)(3) (emphasis added).  An "individual question" is one for which class members must "present evidence that varies from member to member" to make a *prima facie* showing on that question.  *Mulford*, 242 F.R.D. at 625.  A "common question" is one for which "the same evidence will suffice for each [class] member to make a *prima facie* showing."  *Id.*  Superiority requires that "a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3) (emphasis added).

In the present Motion, Defendant urges the Court to strike Plaintiff's UPA class allegations because Plaintiff cannot satisfy the requirements of Rule 23 as a matter of law. Defendant advances three arguments in support of its Motion. First, Defendant argues that Plaintiff cannot, as a matter of law, satisfy the requirement of superiority. [Doc. 15] at 4–6. Second, Defendant argues that Plaintiff cannot establish the predominance requirement as a matter of law because individual questions of causation predominate. *Id.* at 6–7. Finally, Defendant contends that Plaintiff cannot establish the predominance requirement as a matter of law because individual questions of damages predominate. *Id.* at 9–10. The Court is not persuaded.

## I. Superiority

Defendant contends that Plaintiff cannot, as a matter of law, satisfy the Rule 23(b)(3) requirement of superiority. [Doc. 15] at 4–6. Defendant argues that, under the facts of this case, individual claims are superior to a class action. *Id.* Because successful individual claimants would receive greater monetary damages than successful class members, Defendant argues that it would therefore be "less fair" to certify the class action than to require individual claimants to file individual claims. *Id.* at 5 (quoting *Mulford*, 242 F.R.D. at 631). Defendant further argues that the cost of individual claims should not be a problem, as Plaintiff contends in her complaint, because the UPA provides for the award of costs and attorney fees to successful litigants. *Id.* at 4–5 (comparing the present case to *Mulford*, 242 F.R.D. at 631). Defendant cites to both federal and state UPA cases in which individual claims were found to be superior to class actions for this very reason. *Id.* at 4–6 (citing *Mulford*, 242 F.R.D. at 632; *Brooks*, 2004-NMCA-134,

7

¶¶ 45, 46).  Finally, in its reply, Defendant contends that "the legislature sought to encourage individual [claims] under the UPA."  [Doc. 32] at 6.

Defendant's arguments are unpersuasive.  Even if everything Defendant states is true, Defendant has still failed to show that Plaintiff cannot establish superiority *as a matter of law*.  Individual claims may be superior to a class action in some situations.  But as noted in Plaintiff's response, the possibility of recovering costs and attorney fees does not by definition make individual suits superior in every factual scenario.  *See* [Doc. 26] at 9.  If that were the case, there would be no class-action suits certified under Rule 23(b)(3) based on violations of any statute allowing for costs and attorney fees.  Defendant cites no authority for the proposition that individual claims would be, as a matter of law, superior to a class action under the facts of this case.  Thus, Defendant has not shown that Plaintiff's claims cannot be certified as a class action for inability to establish superiority.

**II.     Predominance**

   A.     Individual Questions of Causation

Defendant contends that individual questions of causation predominate over common questions among class members.  [Doc. 15] at 7–10; [Doc. 32] at 9–12.  To ultimately recover under the UPA, claimants must show that the alleged unfair or deceptive trade practices caused a loss of money or property.  § 57-12-10.  Defendant argues that individual questions predominate here because each class member "must present individual proof" of causation.  [Doc. 15] at 7.  That is, the class members must present individualized evidence of their subjective reactions to, and losses resulting from, the alleged unfair and deceptive trade practices.  *Id.* at 9.  Defendant

argues that the "only way" to determine causation is to require class members to submit individual evidence of their losses. *Id.* at 8.

Defendant argues that individual questions exist and predominate as to multiple factual bases alleged in Plaintiff's complaint.[4]  In discussing its alleged failure to properly disclose installment payment schedules, Defendant contends that class members would need to submit individual evidence of their subjective reactions to establish causation. *Id.* at 8.  Defendant further contends that causation as to the $25 application fee will be "difficult [to prove] even in Plaintiff's individual claim" and "impossible on a class[-]wide basis."[5] [Doc. 32] at 9–10.  The "mere assessment" of the $25 application fee, Defendant argues, cannot establish causation because the fee was disclosed. *Id.* at 12.  Rather, Plaintiff must show "something else"—such as the effect of the alleged deceptive trade practice on individual consumers—to establish causation. *Id.*  And, Defendant contends, individual questions will predominate over common questions in such a showing.  In support of its arguments, Defendant cites case law involving suits in which individual questions of causation defeated the predominance requirement. [Doc. 15] at 7–9.

Defendant's argument is not persuasive.  Defendant conflates the concept of causation with that of reliance.  Proof of causation under the UPA does not require a showing of reliance. *Mulford*, 242 F.R.D. at 621 ("A claimant under the UPA need not allege detrimental reliance on the deceptive practice in order to state a valid claim.").  "Causation requires a nexus between a

---

[4] In the Motion, Defendant only discusses individual questions of causation concerning its alleged failure to adequately disclose installment payment schedules. [Doc. 15] at 7–9. Following Plaintiff's extensive discussion on the $25 application fee in the response, [Doc. 26] at 11–17, Defendant's reply discusses individual questions of causation with respect to the $25 application fee as well. [Doc. 32] at 9–12.

[5] In her response, Plaintiff indicates that the focus of her UPA claim will be the $25 application fee—not the "improper disclosure of payment schedules" discussed in Defendant's Motion. [Doc. 26] at 11.

defendant's conduct and a plaintiff's loss." *Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶ 20, 135 N.M. 265 (internal quotation marks omitted).  In contrast, reliance "concerns the nexus between a defendant's conduct and a plaintiff's purchase or sale." *Id.*  Thus, a claim for UPA violations does not require the claimant to show reliance on the defendant's alleged unfair or deceptive trade practices; instead, the claimant merely must an economic loss as a result of the alleged violation.  *Mulford*, 242 F.R.D. at 621.  In many cases, a showing of economic loss simply requires the claimant to show that the "product was not what it was represented to be and, instead, was a product of lesser economic value." *Id.* at 626.  Plaintiff contends that causation as to the $25 application fee is a common question because each of the purported class members paid the application fee and thus received a product of lesser economic value than represented by Defendant.  [Doc. 26] at 14.

Moreover, Plaintiff contends that causation may not require individual questions if the court were to assess causation under an "objective standard of materiality." *Id.* at 16–17 (citing *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 71–72, 133 N.M. 669, and *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 611 (3rd Cir. 2011)).  Here, Plaintiff argues, applying an objective standard to the question of causation would result in common questions of causation rather than individual questions.  *Id.* at 17.

Second, to the extent that individual questions might exist, Defendant has not established that such questions *predominate* over common questions as a matter of law.  The presence of individual questions does not preclude class certification under Rule 23(b)(3).  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196–97 (2013) (discussing situations in which individual questions "do not undermine class cohesion and thus cannot be said to

'predominate'"); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)."). As illustrated by *Mulford* and other cases discussed in the briefing, the predominance inquiry is fact-specific. Even if Defendant were correct in that individual questions exist for certain factual bases, such arguments go to the *existence* of individual questions; they do not alone establish the *predominance* of such questions. Thus, Defendant has not shown that individual questions of causation predominate over common questions as a matter of law.

> B. <u>Individual Questions Concerning Damages</u>

Finally, Defendant argues that individual questions concerning damages predominate over common questions. [Doc. 15] at 9–10. Defendant contends that no class-wide formula can be used to calculate actual monetary damages among class members. *Id.* at 9. Defendant again uses the example of its alleged failure to adequately disclose installment payment schedules to argue that individual questions will predominate in determining actual damages. *Id.* at 9–10.

Defendant's argument is unpersuasive. As discussed above, the *presence* of individual questions does not prevent certification under Rule 23(b)(3). *Amgen Inc.*, 133 S. Ct. at 1196–97 (2013); *Messner*, 669 F.3d at 815; *see Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("[T]he text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high . . . ."). It may be entirely accurate that Plaintiff's claims concerning Defendant's alleged failure to disclose installment payment schedules would include various individual questions. But that is insufficient to show that individual questions concerning damages defeat the predominance requirement as a matter of law. Additionally,

Defendant's Motion addresses only one of Plaintiff's factual bases for the UPA claim—the claim concerning inadequate disclosure of installment payment schedules. Defendant does not address the common questions that may exist as to the other factual bases, such as the allegations concerning the $25 application fee.[6] In summary, Defendant has failed to show that individual questions *predominate* and preclude class certification as a matter of law.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion to Strike or Dismiss Class Allegations under UPA [Doc. 15] is **DENIED.**

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**

---

[6] In its reply, Defendant claims that "Plaintiff is trying to have her cake and eat it too" by "alleging UPA violations unrelated to the $25 application fee" and at other times distancing herself from those claims. [Doc. 32] at 9. Defendant argues that because Plaintiff "seeks class-action treatment of *all* of her UPA claims . . . *all* of those claims must be considered in judging whether Plaintiff's UPA class allegations should be stricken." *Id.* Assuming *arguendo* that Defendant were correct in that Plaintiff cannot obtain class certification as to the installment payment schedules, such a conclusion does not mean that Plaintiff's class action cannot be certified as to another factual basis alleged in the complaint.